UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
SOCRATES SOTO,                                                     :
                                                                   :
                           Plaintiff,                              :
                                                                   :
            -v-                                                    :    23 Civ. 6044 (JPC)
                                                                   :
VANGUARD CONSTRUCTION AND                                          :    OPINION AND ORDER
DEVELOPMENT COMPANY, INC., MICHAEL                                 :
STRAUSS, *In His Individual and Official Capacities*, and          :
ANDY FINLEY, *In His Individual and Official*                      :
*Capacities*,                                                      :
                                                                   :
                           Defendants.                             :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Socrates Soto alleges that his former employer, Vanguard Construction and Development Company ("Vanguard"), as well as Andy Finley, his former supervisor there, and Michael Strauss, Vanguard's owner, fostered a hostile work environment because of Soto's sex, race, and ethnicity, and then retaliated against him when he protested their actions. Soto brings discrimination and retaliation causes of action against them under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* (the "NYCHRL"). He also brings a New York state law cause of action of negligence against Vanguard and Strauss, and state law causes of action of assault and battery against Finley. Defendants have moved to dismiss all causes of action.

For the reasons that follow, the Court grants Defendants' motion, concluding that Soto has failed to state a claim as to any of his federal causes of action and declining to exercise

supplemental jurisdiction over his state law causes of action. This dismissal is without prejudice to Soto filing an amended complaint.

## I. Background

### A. Facts[1]

As of the filing of the Complaint, Soto was a 49-year-old Hispanic male. Compl. ¶ 21. In late 2004, he began working as a "Laborer" for Vanguard, *id.* ¶ 27, and he continued to do so—seemingly without incident—until December 21, 2020, *id.* ¶ 30. On that date, Soto was working in the kitchen area of a restaurant that Vanguard was constructing when he was approached by Finley, Vanguard's Site Supervisor for the location. *Id.* ¶¶ 25, 31. Finley "forcefully grabbed and squeezed [Soto's] left chest/breast muscle." *Id.* ¶ 32. After this contact, Soto pulled away and told Finley to stop, but Finley reached back out, "grabbing and squeezing [Soto's] buttocks." *Id.* ¶¶ 33-34. Again, Soto immediately pulled away and told Finley to stop touching him, at which point Finley walked away laughing. *Id.* ¶¶ 37-38.

This was not the only time Soto took offense from Finley's behavior. Soto also complains that two days later, on December 23, Finley mistreated two Hispanic carpenters from another company in Soto's presence. *Id.* ¶ 44. In a rage, Finley approached the two carpenters "in a physically threatening manner" and threw their personal items—such as jackets and backpacks—onto the ground. *Id.* ¶¶ 44-45, 62. Soto interjected to prevent the situation from escalating. *Id.* ¶ 47. And Soto had another incident with Finley the next day, December 24. Upset about the quality of the caulking at the worksite, Finley ranted that "fucking immigrants come to my country

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint, Dkt. 1 ("Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

and take my tax dollars" when they "abuse the system [and] go on unemployment," and that immigrants "have no job integrity, they sit down, drink coffee, and fuck it." *Id.* ¶¶ 49-52. Once again, Soto interjected, this time commenting that Finley's last name shows that he too was a descendent of immigrants. *Id.* ¶ 53. Finley did not respond but "walked away mumbling more discriminatory comments." *Id.* ¶ 55. According to Soto, Finley only treated Hispanic employees in this poor manner. *Id.* ¶ 48. During the December 23 incident, for example, non-Hispanic employees were nearby but were not physically threatened by Finley. *Id.*

Soto then took some time off for the holidays, and was off work from Christmas 2020 until January 6, 2021. *Id.* ¶ 56. During that time, Soto learned that Finley continued to make disparaging comments toward at least two other Hispanic employees, including commenting that "the employees were in America[] long enough and that they should be able to speak English by now." *Id.* ¶¶ 57-58. So on January 7, 2021, Soto texted Vanguard's Human Resources ("HR") Administrator and complained about the three incidents that had occurred on December 21, 23, and 24 of the prior year. *Id.* ¶ 62. When the Administrator and Soto discussed the incidents in greater detail later that day, the Administrator implied that Finley's conduct was not serious and compared it to horseplay or the type of behavior common among baseball and basketball teammates. *Id.* ¶¶ 63-67. Believing that pursuing his complaint with HR would be futile, Soto requested a meeting with Finley and his bosses, including Vanguard's Executive Vice President of Construction, a Vanguard Foreman, and Strauss, Vanguard's owner. *Id.* ¶¶ 24, 70-71. But no meeting was ever scheduled, and Soto never heard more about his complaint to HR. *Id.* ¶ 74. Later, the HR Administrator told Soto that Finley would be fired at the end of the week, but that too never happened. *Id.* ¶¶ 75-77.

Soto alleges that, after his complaint to HR, Defendants "began to systematically place [Soto] in less-desirable positions and/or assigned [Soto] to complete tasks that are regarded as punitive." *Id.* ¶ 83. Suddenly, Soto "was being relegated to clean up duties and was not given the types of assignments that he was given before his complaint." *Id.* ¶ 85. Soto gave notice to Defendants of his intent to pursue legal action against them on July 12, 2021. *Id.* ¶ 104. From then until Soto ceased working at Vanguard, the company's management, including Strauss, tried to dissuade Soto from pursuing his claims. *Id.* Specifically, Strauss approached Soto multiple times to try and convince him to drop his claims—even once offering to pay for counseling, but only if Soto dropped the complaint against Finley. *Id.* ¶¶ 105-108. And Strauss continued to urged Soto to drop his complaint against Finley, even after Soto confided in Strauss that he had been a victim of sexual assault as a youth, explaining his reaction to Finley's conduct. *Id.* ¶¶ 109, 113.

**B.    Procedural History**

Soto filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") later that year on December 2, 2021. *Id.* ¶ 12. He received a Notice of Right to Sue on April 29, 2023, *id.*, and filed this Complaint on July 13, 2023. Soto brings eleven causes of action: Cause of Action I for sexual harassment and discrimination, citing a hostile work environment, under Title VII against Vanguard, *id.* ¶¶ 131-141; Cause of Action II for retaliation under Title VII against Vanguard, *id.* ¶¶ 142-153; Causes of Action III and IV for discrimination and retaliation, respectively, under the NYSHRL against Vanguard, *id.* ¶¶ 154-180; Cause of Action V for discrimination and retaliation under the NYSHRL against Finley and Strauss, individually, *id.* ¶¶ 181-194; Causes of Action VI and VII for discrimination and retaliation, respectively, under the NYCHRL against Vanguard, *id.* ¶¶ 195-225; Cause of Action VIII for discrimination and retaliation under the NYCHRL against Finley and Strauss, individually, *id.*

4

¶¶ 226-239; Causes of Action IX and X for assault and battery, respectively, against Finley, *id.* ¶¶ 240-260; and Cause of Action XI for negligence and gross negligence against Vanguard and Strauss, individually and collectively, *id.* ¶¶ 261-273.

Defendants thereafter moved to dismiss Soto's Complaint—Vanguard and Strauss together, and Finley separately—for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkts. 24, 27. Those motions are now fully briefed. *See* Dkt. 26 ("Strauss & Vanguard MTD"); Dkt. 28 ("Finley MTD"); Dkt. 30 ("Opp. to Finley"); Dkt. 32 ("Opp. to Vanguard & Strauss"); Dkt. 36 ("Strauss & Vanguard Reply"); Dkt. 37 ("Finley Reply"). From the Complaint, it was unclear what theory of Title VII liability Soto was pursuing in his first Cause of Action, as he used language that suggested both disparate treatment and hostile work environment. *See* Compl. ¶¶ 132-136. After the Court sought clarification, Dkt. 38, Soto explained that, in his first Cause of Action, he only is pursuing a theory that he experienced a hostile work environment based on his sex, race, and ethnicity. Dkt. 39 at 1-2 ("Soto Suppl. Br."); *see also* Dkt. 40 (Finley's supplemental brief); Dkt 41 (Strauss and Vanguard's supplemental brief).

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015),

it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### III. Discussion

#### A. Title VII Causes of Action

The Court begins with Soto's federal law claims. In his first Cause of Action, he alleges that Vanguard violated Title VII by creating a hostile work environment "because of his sex/gender (male), race/color (Hispanic), and national origin/ethnicity."[2] Compl. ¶¶ 131-141. In his second

---

[2] As mentioned, despite somewhat unclear allegations in the Complaint, Soto clarified in his supplemental briefing that he is not relying on a theory of disparate treatment discrimination. Soto Suppl. Br. at 1-2. In any event, the Complaint fails to state a claim of disparate treatment discrimination because of the absence of sufficiently pleaded adverse employment action. To plead a claim of disparate treatment discrimination under Title VII, a plaintiff must allege, *inter alia*, that he "was subject to an adverse employment action." *Harris v. NYC Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239, at *6 (S.D.N.Y. Aug. 27, 2021) (internal quotation marks omitted). An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," *id.*; rather, it must be accompanied by "an attendant negative result, a deprivation of a position or an opportunity," *Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18 Civ. 507 (VEC), 2019 WL 5887479, at *4 (S.D.N.Y. Nov. 12, 2019) (internal quotation marks omitted).

Generously read, the Complaint suggests three categories of alleged adverse employment actions: (1) Finley's grabbing and squeezing of Soto's "left chest/breast muscle" and buttocks, Compl. ¶¶ 31-43; (2) Finley's poor treatment of various other Hispanic employees and non-employees, *id.* ¶¶ 44-46, 49-55, 57-58; and (3) Vanguard's assignment of Soto to "tasks" that he regarded as punitive (but which he does not allege were outside his work duties), *id.* ¶¶ 83-85. Soto relies on the first two to support his hostile work environment theory, *see* Opp. to Vanguard & Strauss at 6-9; *infra* III.A.1, and the third to support his claim of retaliation, *see* Opp. to Vanguard & Strauss at 10; *infra* III.A.2. None of these would constitute adverse employment action for purposes of a disparate treatment claim. For instance, the singular occasion of Finley's alleged assault would not suffice, particularly given the absence of any allegation of a "lasting harm to [Soto's] ability to do his job" from that incident. *Mathirampuzha v. Potter*, 548 F.3d 70, 73, 78-79 (2d Cir. 2008) (concluding that allegations that a supervisor "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye" such that the plaintiff subsequently "required eye surgery," did not amount to an adverse employment action for discrimination purposes). In fact, Soto continued to work at Vanguard until at least July 12, 2021, Compl. ¶ 104, despite Finley not being assigned to a different project location until late February or early March 2021, *id.* ¶ 77. And a plaintiff's assigned tasks—even if undesirable and unfavorable—are not adverse employment actions for the purposes of Title VII discrimination if

6

Cause of Action, Soto alleges that Vanguard retaliated against him for complaining to management about Finley's behavior. *Id.* ¶¶ 142-153.

### 1.  Hostile Work Environment

Soto pleads that he was subjected to a sex-, race-, and ethnicity-based hostile work environment. *Id.* ¶¶ 131-141.  He separates his arguments into two groups—one supporting his claim of race- and ethnicity-based harassment, and the other supporting his claim of sex-based harassment.  *See* Opp. to Vanguard & Strauss at 7-9 (treating race- and ethnicity-based harassment as one); *id.* at 4-7 (sex-based harassment).  The Court addresses each in turn.

#### i.  Race- and Ethnicity- Based Harassment

"Under Title VII, to state a claim for a hostile work environment, the plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Everett v. New York City Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2023 WL 5629295, at *7 (S.D.N.Y. Aug. 31, 2023) (alterations adopted and internal quotation marks omitted).  "A hostile work environment is created '[w]hen the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment."'" *Moore v. DeJoy*, No. 18 Civ. 9967 (JPC), 2021 WL 4523503, at *5 (S.D.N.Y. Sept. 30, 2021) (alteration in original) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)).  To determine

---

the assignments fall within the scope of his normal work duties.  *See Johnson v. Morrison & Foerster LLP*, No. 14 Civ. 428 (JMF), 2015 WL 845723, at *5 (S.D.N.Y. Feb. 26, 2015) ("Indeed, a plaintiff's assigned task, however undesirable it may be, does not constitute an adverse employment action under Title VII if it falls within his or her job responsibilities." (cleaned up)).

whether an environment is "hostile" or "abusive," a court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. A hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). "But isolated incidents or episodic stray remarks are not sufficiently continuous and concerted in order to be deemed pervasive." *Matthew v. Tex. Comptroller of Pub. Accts.*, No. 21 Civ. 5337 (JPC), 2022 WL 4626511, at *9 (S.D.N.Y. Sept. 30, 2022) (alteration adopted and internal quotation marks omitted).

Three incidents underpin Soto's claim of race- and ethnicity-based hostile work environment: (1) Finley's mistreatment of two Hispanic carpenters from a different company, Compl. ¶¶ 44-46; (2) Finley's ranting about immigrants in Soto's presence in response to poor caulking, *id.* ¶¶ 49-55; and (3) Finley's statement to two Hispanic employees, while Soto was out from work, that they should speak English, *id.* ¶¶ 57-59. According to Soto, these three incidents show that "the hostile work environment was sufficiently severe and/or pervasive to alter the conditions of [Soto]'s employment as it compelled [Soto] to both intervene on behalf of the Hispanics . . . and to file a complaint with Defendant Vanguard." Opp. to Vanguard & Strauss at 9.

Title VII demands more than what Soto alleges in the Complaint. The incidents that Soto describes, even fully credited, are not "sufficiently continuous and concerted to have altered the conditions of [his] working environment," *Alfano*, 294 F.3d at 374 (internal quotation marks

omitted), and therefore not enough to plausibly allege a hostile work environment. The three aforementioned instances allegedly occurred between December 23, 2020, and January 6, 2021. *See* Compl. ¶¶ 56-58, 62. But Soto worked only two of the fourteen days during that time period, and the Complaint does not indicate how long, of his sixteen years at Vanguard, Soto worked under Finley. What is more, in none of these incidents was the complained of conduct directed toward Soto. In fact, Finley's alleged conduct during the first incident was not even directed towards a Vanguard employee. *See* Compl. ¶¶ 44-46. Although "evidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination," *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001), they are "less supportive" than evidence of discrimination directed toward the employee himself, *Sykes v. Rachmuth*, No. 22 Civ. 3989 (JPC), 2023 WL 2752865, at *9 (S.D.N.Y. Mar. 31, 2023) (internal quotation marks omitted).

To be sure, Finley is alleged to have once "act[ed] in a physically threatening manner" towards a pair of Hispanic carpenters and to have "thr[own] their personal items on the ground"—conduct which Soto says was not directed toward "non-Hispanic employees within the same vicinity." Compl. ¶¶ 44-45, 48. But Soto did not feel threatened enough to be deterred from intervening, *id.* ¶ 47—which cuts against the severity of the interaction. And in the other two incidents, the alleged conduct is closer to "stray remarks" that courts have deemed insufficient to support a claim of relief. *Matthew*, 2022 WL 4626511, at *9; *see, e.g.*, *Augustin v. The Yale Club of New York City*, 274 F. App'x 76, 77 (2d Cir. 2008) ("[E]pisodes of name-calling, inappropriate behavior by a supervisor, and other perceived slights . . . do not constitute a hostile work environment even if taken as true."); *Fletcher v. ABM Bldg. Value*, No. 14 Civ. 4712 (NRB), 2018 WL 1801310, at *23 (S.D.N.Y. Mar. 28, 2018) (collecting cases which "establish[] that sporadic

9

comments, slurs, and jokes" are insufficient to establish a hostile work environment), *aff'd*, 775 F. App'x 8 (2d Cir. 2019). "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (alteration adopted and internal quotation marks and citations omitted). Finley's two alleged racially charged comments are a far cry from a "steady barrage of opprobrious racial comments." *Id.* They are "isolated incidents of offensive conduct" that "will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004).

Soto's allegations of discriminatory conduct directed at some employees and some non-employees do not plausibly amount to an objectively hostile work environment. No single incident is "extraordinarily severe," and the combination of the three incidents did not transform Soto's workplace into one "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Moore*, 2021 WL 4523503, at *5 (quoting *Harris*, 510 U.S. at 21). Thus, Soto has not sufficiently alleged non-conclusory facts to support his race- and ethnicity-based hostile work environment claim under Title VII.

   ii.  **Sex-Based Harassment**

The fundamental hostile work environment test does not change when a plaintiff alleges same-sex sexual harassment. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 606 F. Supp. 2d 427, 438 (S.D.N.Y. 2009) ("This fundamental analysis is no different in the same-sex sexual harassment context."). Title VII's prohibitions "extend to sexual harassment of any kind that meets the statutory requirements." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). At the same time, however, Title VII's prohibition of sex-based discrimination is, of

10

course, "directed only at *discrimination* because of sex," *id.* (alterations adopted and internal quotation marks omitted); the statute does not establish "a general civility code for the American workplace," *Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The Supreme Court has "never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale*, 523 U.S. at 80. Nor does the statute "reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Redd*, 678 F.3d at 176 (quoting *Oncale*, 523 U.S. at 81). And for this reason, the Supreme Court has cautioned courts and juries from "mistak[ing] ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory 'conditions of employment.'" *Oncale*, 523 U.S. at 81.

In the same-sex sexual harassment context, a plaintiff may show discrimination on the basis of sex by alleging that: "(1) the harasser is homosexual such that the conduct could be deemed to involve explicit or implicit proposals of sexual activity; (2) the victim is harassed in such sex-specific and derogatory terms by someone of the same gender as to make it clear that the harasser is motivated by general hostility to the presence of someone of the same gender in the workplace; or (3) constitutes direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Sherman v. Fivesky, LLC*, No. 19 Civ. 8015 (LJL), 2020 WL 2136227, at *11 (S.D.N.Y. May 5, 2020) (citing *Oncale*, 523 U.S. at 80-81). Although these three paths to proving discrimination are not exhaustive, the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted

discrimination because of sex," no matter which "evidentiary route the plaintiff chooses to follow." *Oncale*, 523 U.S. at 81 (alteration adopted and internal quotation marks omitted).

At this motion to dismiss stage, Soto "has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." *Vega*, 801 F.3d at 85 (emphasis and internal quotation marks omitted).  He argues that he has met that burden because the Complaint alleges: (1) "Finley did not subject similarly situated female employees to the same or similar conduct," Compl. ¶ 42; (2) "If [Soto] were a female employee, who[se] chest and buttocks were forcefully grabbed by Defendant Finley, Defendants would have acted," *id.* ¶ 80; and (3) "Defendants did not take [Soto's] complaint seriously because he is a male that was sexually assaulted and forcibly touched [by] a male [in the] workplace," *id.* ¶ 81.  *See* Opp. to Vanguard & Strauss at 7 (citing Compl. ¶¶ 42, 80-81).  This, Soto says, is sufficient "to allow the Court to draw an inference that [Soto] suffered this unlawful contact by Defendant Finley because [Soto] is a male." *Id.* at 7; *see also* Soto Suppl. Br. at 2 (explaining that "allegations of differential treat[ment] are alleged throughout the Complaint" to "prove that [Finley's] harassment of [Soto] was gender-based").

Soto's pleading is not the kind of "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace" that courts have recognized as sufficient to plead a claim of discrimination. *Oncale*, 523 U.S. at 80-81.  It is well established that Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Although Soto need not plead "detailed factual allegations" to survive a motion to dismiss, neither "a formulaic recitation of the elements of a cause of action" nor a "naked assertion[] devoid of further factual enhancement" suffices to meet his burden. *Id.* (internal quotation marks omitted).  Soto fails to meet these standards; he merely recites threadbare conclusions with no supporting factual assertions.  The Complaint includes

12

general allegations that female employees were treated differently and asserts that Defendants would have conducted themselves differently had he been a female employee, but it does not provide the Court with any specific factual allegations to back those conclusions. This incantation-like pleading of conclusions drawn from comparator evidence—without any of the underlying evidence itself—is not enough to plausibly give rise to an inference of discriminatory intent on behalf of Defendants. *See Anderson v. City of New York*, No. 22 Civ. 3990 (NSR), 2024 WL 183103, at *9 (S.D.N.Y. Jan. 17, 2024) ("[W]ithout more facts to show discriminatory motive, the allegation that [opposite sex] employees were not subject to the harassment also falls short of stating a claim."). Accordingly, Soto's claim of Title VII discrimination based on a sex-based hostile work environment theory also fails. Cause of Action I is therefore dismissed in its entirety.

### 2. Retaliation

Soto's other federal cause of action, pleaded in Cause of Action II, alleges retaliation in violation of Title VII. *See* Compl. ¶¶ 142-153. To demonstrate a *prima facie* case of retaliation under Title VII, "a plaintiff must establish: (1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Harris*, 2021 WL 3855239, at *8 (internal quotation marks omitted). "Protected activities under Title VII include employee complaints about employer discrimination." *Moncrief v. N.Y. Pub. Libr.*, No. 05 Civ. 2164 (TPG), 2007 WL 2398808, at *5 (S.D.N.Y. Aug. 17, 2007), *aff'd*, 343 F. App'x 627 (2d Cir. 2009). Furthermore, "[a] plaintiff must also ordinarily plead that the defendant had knowledge of the protected activity." *Cardwell v. Davis Polk & Wardwell LLP*, No. 19 Civ. 10256 (GHW), 2021 WL 4434935, at *29 (S.D.N.Y. Sept. 23, 2021) (internal quotation marks omitted). "A plaintiff

may meet this pleading standard by pleading facts that permit the Court to reasonably infer that [he] engaged in protected activity known to the Defendants." *Id.*

The definition of adverse employment action for Title VII retaliation claims "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." *Vega*, 801 F.3d at 90. For retaliation claims, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57. This adverse action definition in the retaliation context "extends beyond workplace-related or employment-related retaliatory acts and harm." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67). At the same time, however, Title VII's anti-retaliation provision still "requir[es] a showing of *material* adversity" and "consider[s] the perspective of a *reasonable* employee." *Id*. "Although 'petty slights or minor annoyances' are not actionable, the Supreme Court has emphasized that '[c]ontext matters.'" *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) (alteration in original) (quoting *Hicks*, 593 F.3d at 165). While the standard is "objective," *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68, "something might be a 'petty slight' to one person but 'matter enormously' to another, such that it could 'deter a reasonable employee from complaining about discrimination,'" *Massaro v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 774 F. App'x 18, 22 (2d Cir. 2019) (quoting *Vega*, 801 F.3d at 90).

To adequately plead causation, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e-3(a)). A causal connection in retaliation claims can be pleaded "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar

conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Moreover, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. "But-for causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (cleaned up).

Soto argues that Vanguard retaliated against him following his complaint to HR by "systematically plac[ing] [him] in less-desirable positions and/or assign[ing] [him] to complete tasks that are regarded as punitive." Compl. ¶ 83; *see* Opp. to Vanguard & Strauss at 10. Specifically, Soto notes that "[a]ll of a sudden, [he] was being relegated to clean up duties and was not given the type of assignments that he was given before his complaint." Compl. ¶ 85. But that is the extent of Soto's pleading. And although it is true that "[t]he assignment to arduous tasks, even without a change of job title, is one type of adverse action that could deter Title VII protected activity," *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 363 (S.D.N.Y. 2006), Soto's Complaint is conspicuously devoid of specificity. There are no allegations about who in the company assigned him to those duties, when those assignments took place, or what kind of assignments he received before the protected activity. His "bare-bones and conclusory allegations" of having "been assigned to less desirable jobs" are insufficient to support his claim of retaliation. *Polanco v. City of New York*, No. 16 Civ. 9196 (LTS), 2018 WL 3178225, at *6 (S.D.N.Y. June 27, 2018); *see also Anderson v. City of New York*, No. 22 Civ. 3990 (NSR), 2024 WL 183103, at *8 (S.D.N.Y. Jan. 17, 2024) ("Plaintiff's conclusory allegations" were "far too speculative to plausibly state a retaliation claim," because the plaintiff did "not provide any specific facts to support a causal nexus

between the" retaliatory act and the protected activity, "or to create [a] plausible inference of retaliatory motive."). And some of what he does plead—like allegations that he continued to make complaints to management, *e.g.*, Compl. ¶ 111—"certainly suggests that the alleged retaliatory acts did not dissuade [Soto] from continuing to make complaints," which "is relevant to the inquiry of whether [Soto] suffered a materially adverse action." *Brand v. New Rochelle City Sch. Dist.*, No. 19 Civ. 7263 (CS), 2022 WL 671077, at *12 (S.D.N.Y. Mar. 7, 2022) (collecting cases). Nor does the Complaint state whether these other complaints were made before or after the assignment of less-desirable duties.

Furthermore, even putting aside Soto's sparing description of the allegedly retaliatory actions, the Complaint does not sufficiently allege a connection between the protected activity and the retaliatory action. As noted, a plaintiff may show a causal connection through indirect evidence. And indirect evidence of causation may include evidence that the retaliatory action occurred soon after the protected activity. *See Vega*, 801 F.3d at 90-91. The Second Circuit, for example, "has held that an adverse action that occurs within two months or less of a protected activity is sufficient to survive a motion to dismiss on the issue of causation." *Polanco*, 2018 WL 3178225, at *6 (alteration adopted and internal quotation marks omitted). But it is well settled that "when mere temporal proximity is offered to demonstrate causation, the protected activity and the adverse action must occur very close together." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (internal quotation marks omitted).

Soto does not set out the temporal relationship between his complaint to HR and his assignment to less-desirable duties with any sort of specificity. He merely alleges that the change was "all of a sudden." Compl. ¶¶ 84-85. And the Complaint does not include any other direct or indirect evidence that Soto's less-desirable work assignments were prompted by his HR complaint

16

or that they would not have occurred but-for his protected activity. The Complaint thus does not include sufficient factual material to state a claim of retaliation that is plausible on its face. *See Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015) (affirming dismissal of a Title VII retaliation claim when the plaintiff failed to plead date for retaliatory action, making it "impossible to determine whether 'the temporal proximity [between the two events is] very close'" (alteration in original) (quoting *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001))); *Winston v. City of New York*, No. 12 Civ. 395 (FB), 2013 WL 4516097, at *4 (E.D.N.Y. Aug. 23, 2013) (collecting cases and dismissing a retaliation claim as insufficiently pleaded when it lacked information about the temporal proximity of events).

In sum, Soto's "conclusory allegations are simply too vague in nature and non-specific as to time to serve as a basis for [his] retaliation claims." *Henry*, 18 F. Supp. 3d at 412 (alteration adopted and internal quotation marks omitted). Cause of Action II, alleging Title VII retaliation, is accordingly dismissed.

**B.    State Law Causes of Action**

Soto also brings causes of action under New York State and New York City law. Compl. ¶¶ 154-273. Under 28 U.S.C. § 1367(c)(3), the Court may "decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 103 (2d Cir. 1998). In determining whether to exercise supplemental jurisdiction, courts consider "the values of judicial economy, convenience, fairness and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Considering these factors, the Court declines to exercise supplemental jurisdiction over Soto's state and city law causes of action. *See Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (explaining that in a typical case in which "a plaintiff's federal claims are dismissed before trial, the state law claims should be

17

dismissed as well" (internal quotation marks omitted)); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (explaining that ordinarily "the balance of factors . . . will point toward declining jurisdiction over the remaining state-law claims" (quoting *Carnegie-Mellon Univ.,* 484 U.S. at 350 n. 7)).

C.   **Leave to Amend**

Soto has requested leave to amend if the Court dismisses the Complaint. Opp. to Vanguard & Strauss at 17-18; Opp. to Finley at 15-16. Generally, a "district court has discretion whether or not to grant leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) (internal quotation marks omitted). Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave when justice so requires." This is a "permissive standard," which follows from the "strong preference" of federal courts "for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam) (internal quotation marks omitted); *see also Johnson-Tucker v. Loyola Sch.*, No. 23 Civ. 1351 (JGLC), 2024 WL 291222, at *1 (S.D.N.Y. Jan. 25, 2024) ("Amendments are generally favored because they tend to facilitate a proper decision on the merits." (internal quotation marks omitted)). Indeed, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). But a court may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").

The Court grants Soto leave to file an amended complaint. Soto may be able to plead additional facts that sufficiently state claims for relief under Title VII, and no Defendant argues that the Court should deny Soto leave to amend, *see generally* Strauss & Vanguard Reply; Finley Reply. The Court emphasizes, however, that Soto should amend only if he is able to resolve the pleading deficiencies outlined in this Opinion and Order. If Soto chooses to file an amended complaint, he must do so within thirty days of the date of this Opinion and Order. Because an amended complaint will completely replace, not supplement, the Complaint, any facts or causes of action that Soto wishes to maintain must be included in the amended complaint. Thus, the Court grants Soto leave to replead any claims, including his state and city law causes of action, in that amended complaint.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motions to dismiss. The Court dismisses Causes of Action I and II—Soto's Title VII claims against Vanguard—without prejudice for failure to state a claim upon which relief can be granted. The Court declines to exercise supplemental jurisdiction over Causes of Action III, IV, V, VI, VII, VIII, IX, X, and XI and therefore dismisses those Causes of Action without prejudice as well. The Court grants Soto leave to amend his Complaint. Any amended complaint must be filed within thirty days of this Opinion and Order. If Soto fails to file an amended complaint within thirty days or fails to obtain an extension of time to do so by that date, the Court will dismiss with prejudice Causes of Action I and II and direct the Clerk of Court to close the case.

The Clerk of the Court is respectfully directed to close the motions pending at Docket Numbers 24 and 27.

SO ORDERED.

Dated: September 25, 2024
       New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　JOHN P. CRONAN
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge